```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION


UNITED STATES OF AMERICA        :

vs.                             :    CRIMINAL ACTION 07-00219-WS

LILIAN GUTIERREZ                :
```

REPORT AND RECOMMENDATION

By Order dated September 24, 2007, this action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) to conduct an evidentiary hearing to determine the nature of Defendant's detention until she was arrested on the warrant issued in this case (Doc. 28). This issue was raised in Defendant's Motion to Dismiss Indictment filed on September 4, 2007 (Doc. 16). Because such a motion is specifically excepted from referral under § 636(b)(1)(A), the undersigned is submitting this report and recommendation pursuant to § 636(b)(1)(B).

Since the same issue has been raised in five other actions pending before two other District Judges in this Court, a consolidated evidentiary hearing was held on October 12, 2007[1]. Present for the hearing were Defendant, Lilian Gutierrez; counsel

---

[1] The Motions to Dismiss Indictment were filed in U.S. v. Rueda-Colindres, No. 07-00215-KD; U.S. v. Rueda-Betancourth, No. 07-00217-WS; U.S. v. Castillo-Morales, No. 07-00218-CG; U.S. v. v. Gutierrez, No. 07-00219-WS; U.S. v. Barahona, No. 07-00221-KD; and U.S. v. Alejandor-Miramar, No. 07-00222-CG. Assistant Federal Defender Fred Tiemann represents all six Defendants in these actions.

for Defendant, Assistant Federal Defender Fred Tiemann; Assistant U. S. Attorney Daryl Atchison for the Government; Spanish interpreter, Maria Papp; and the other five Defendants.  After consideration of Defendant's Motion to Dismiss Indictment (Doc. 16), the Government's Response in Opposition to Defendant's Motion to Dismiss Indictment (Doc. 25), Defendant's Reply to Government's Response to Motion to Dismiss (Doc. 26), the Joint Stipulation of Facts (Doc. 34), the arguments of counsel, and testimony and evidence presented at the evidentiary hearing, the undersigned finds that Defendant was in civil detention pending removal or deportation proceedings prior to the time that Defendant was arrested on the warrant in this action and recommends that the Motion to Dismiss Indictment be denied.

## FINDINGS OF FACT

The Court finds the facts to be as follows:

1.  Sheila Richerson, Senior Special Agent with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), testified at the hearing concerning all six Defendants.  She is the assigned case agent for Rueda-Colindres, Rueda-Betancourth, Castillo-Morales, and Gutierrez, all of whom were taken into custody at the Shell Chemical facility on July 23, 2007; she assisted in the administrative removal processing as to Barahona and Alejandro-Miramar, who were taken into custody at the same facility on July 19, 2007.  As

part of their duties, ICE Special Agents respond to calls about people suspected of being illegally in the United States.  If, through interview and/or a records check, it is determined that the person is illegally in this country, he or she is taken into administrative custody and transported to the ICE office to complete the paperwork initiating the civil administrative removal or deportation proceedings.[2]  The "catch and release" policy whereby some illegal aliens were released upon initial apprehension was abandoned or revoked in 2006--all illegal aliens are initially detained and go through administrative removal proceedings to return them to their home country.

    2.  In responding to information about suspected illegal aliens, ICE Special Agents also ascertain whether federal criminal laws have been violated.  If so, the United States Attorney's Office is contacted to see if the action will be accepted for prosecution.  Once authorized, the criminal investigation and prosecution proceeds, many times at the same time as the civil administrative removal or deportation proceedings.

    3.  Once the removal or deportation paperwork has been completed, the illegal aliens are turned over to the Detention and Removal Office ("DRO"), a separate department of the

---

[2]Many Immigration and Naturalization Service ("INS") documents and forms are still used since ICE was created in 2003 through the merger of INS and United States Customs.

Department of Homeland Security.  DRO maintains civil custody of the illegal aliens until they are presented to an immigration judge.  DRO is not a part of ICE and once a person is in DRO custody, ICE has no further control over that person and cannot stop or delay the removal proceedings.  DRO handles only civil detentions, not criminal detentions.  ICE agents can and do notify DRO that a person will be charged criminally, but it is only a request that the person be kept in the District and it does not delay the deportation proceedings.[3]

    4.  On Monday, July 23, 2007, Defendant entered the Shell Chemical plant in Saraland, Alabama, as an employee of Nicholas Insulation, a subcontractor doing work at the plant.

    5.  As a Department of Homeland Security-designated "critical infrastructure facility," Shell requires that all persons who seek entrance to the plant provide identifying information in advance, including a Social Security number.  Such persons must then undergo an employee orientation before receiving identification cards and permission to work at the plant.

---

[3]The Court notes that two of the four Defendants taken into custody at the Shell plant on July 23, 2007, were not immediately available for their initial appearance and arraignment set for August 15, 2007, because DRO had transferred them out of District--Rueda-Betancourth to Waterpoof, Louisiana, and Gutierrez to Mason, Tennessee.

6. After Shell personnel ran a background check on Defendant and reviewed the documentation submitted, they believed that Defendant had utilized a false Social Security number to gain access to the plant. Shell contacted ICE and explained the situation.

7. On July 23, 2007, Richerson and other agents went to the Shell Chemical plant in response to Shell's call. Defendant admitted to being illegally in this country, was administratively arrested and taken to the Border Patrol Office for removal or deportation processing, which involves the taking of fingerprints and photographs and completion of the removal paperwork. Computer queries that same day confirmed that Defendant was an illegal alien from Honduras, subject to deportation and deportation documents were completed that same day (see Record of Deportable/Inadmissible Alien dated July 23, 2007, Notice to Appear, Bond, and Custody Processing Sheet dated July 23, 2007, and Notice to Appear dated July 23, 2007, at Doc. 38). A $10,000.00 bond was set by ICE for Defendant on July 23, 2007 (Doc. 38). It thus appears that she could have been released prior to her arrest on the criminal charge on August 22, 2007, by posting bond. Defendant was then released that same day to the civil custody of DRO and transported to the Perry County Correctional Center to await further removal proceedings.

8.   Richerson also contacted the United States Attorney's Office on July 23, 2007, to discuss possible violations of federal law and AUSA Sigler authorized presentment of this action to the grand jury.  A Report of Investigation was prepared on July 24, 2007, in which it is stated that "five employees were apprehended ... for violation of 42 USC 408(a)(7)(B) Social Security fraud" (Doc. 26-2), and Defendant was indicted on July 26, 2007, for a violation of 42 U.S.C. § 408(a)(7)(B)(false use of a Social Security number)(Doc. 1).   An arrest warrant was issued on July 30, 2007 (Doc. 6), and Defendant was arrested on the present criminal charge on August 22, 2007, the same date as Defendant's initial appearance and arraignment (Docs. 12, 13, 15).

9.   Based on the evidence and testimony set out above, the undersigned finds that the nature of Defendant's detention was civil from July 23, 2007, until Defendant was arrested on the present criminal charge on August 22, 2007, and that the primary purpose for this civil detention was to facilitate the deportation process.

CONCLUSIONS OF LAW

The parties agree that the applicable law on the issue presented is set out in United States v. Noel, 231 F.3d 833 (11th Cir. 2000), cert. denied, 531 U.S. 1200 (2001).  In Noel, an illegal alien was detained by the INS on March 7, 1999, and he

was subsequently indicted on April 15, 1999, on a charge of illegal reentry after deportation.  Noel, 231 F.3d at 836.  He was arrested on the federal charge one week later.  Id.  Addressing a question of first impression, the Eleventh Circuit held that the defendant's 39-day administrative detention did not trigger the Speedy Trial Act.  Id.  In a rationale directly on point in this action, the Noel Court reasoned that the Speedy Trial Act was not triggered until the defendant was arrested on federal charges.  Id., citing United States v. Reme, 738 F.2d 1156, 1162 (11th Cir. 1984) (although defendant was detained by INS on October 21, the Speedy Trial Act was not triggered until the following July when defendant was served by the U. S. Marshal with a warrant issued pursuant to the indictment).

Noel additionally states that

> [a]lthough routine INS detentions incident to deportation do not trigger the Speedy Trial Act, a contrary result may be warranted when detentions are used by the government, not to effectuate deportation, but rather as "mere ruses to detain a defendant for later criminal prosecution." U.S. v. Cepeda-Luna, 989 F.2d 353, 357 (9th Cir. 1993); see also U.S. v. De La Pena-Juarez, 214 F.3d 594, 598-99 (5th Cir. 2000) (applying same exception). We agree with the Fifth Circuit's recent decision that this exception will provide Protection for detained aliens, but that the exception should only be applied when "the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." De La Pena-Juarez, 214 F.3d at 598.

Noel, 231 F.3d at 836.

The Noel Court further found that the defendant's indictment did not violate Federal Rule of Criminal Procedure 5(a), as alleged in the pending motion before this Court. "Detentions attendant to deportation proceedings are civil in nature; they do not implicate Rule 5(a), which only governs criminal arrests." Noel, 231 F.3d at 837 (citations omitted). Finally, the Noel Court also held that the defendant's indictment did not violate his due process rights under the Fifth Amendment. "Deportation detentions do not serve to punish those detained, but merely to facilitate the deportation process." Id. The Court found that the 39-day detention before indictment served no purpose other than to facilitate his deportation. See also United States v. Drummond, 240 F.3d 1333 (11th Cir. 2001) (affirming denial of motion to dismiss indictment: "administrative hold" for illegal reentry after deportation did not trigger Speedy Trial Act; Act only began to run when defendant was arrested on subsequent federal indictment for illegal reentry).

Defendant argues that Defendant was criminally arrested and/or charged with a federal criminal offense on July 23, 2007, thereby triggering the requirements of Rule 5(a) and Fourth and Fifth Amendment constitutional rights because (1) SA Richerson discussed the prosecution and presentment of this action to the grand jury with an AUSA that same day; (2) it was decided that it

would be presented to the grand jury; (3) a report of the criminal investigation was prepared stating that Defendant was apprehended for violation of federal criminal law; and (4) Defendant was detained at the Perry County Correctional Center which is used for both civil and criminal detentions.  However, no law was cited to support this contention that such preliminary criminal investigative actions and/or decisions by the Special Agent and the prosecutor constitute a criminal charge or arrest.  Defendant makes no claim that his Speedy Trial Act rights were violated.

Noel clearly states that civil detentions such as occurred in this action do not implicate Rule 5(a), which governs only criminal arrests, nor interfere with Defendant's constitutional rights.  The actions taken by the case agent and prosecutor, including the statement in the report of the criminal investigation that Defendant was apprehended for a violation of federal law, do not convert the initial civil detention into a criminal arrest.  It is also clear from Noel and the other cases cited therein that a civil deportation proceeding and criminal prosecution may proceed at the same time and/or overlap at times without converting the civil detention into a criminal arrest.

Defendant's final claim is that her arrest or detention was a mere ruse to hold her for criminal prosecution.  No evidence or argument was specifically presented on this claim, especially

that the primary or exclusive purpose of the civil detention was to hold Defendant for future criminal prosecution.  In any event, it is clear from the evidence that Defendant's initial civil detention incident to the deportation proceedings was not a ruse and that Defendant would have been detained awaiting removal even if the federal criminal charge had not been brought, unless she made the bond that had been set.

Therefore, for the reasons set out above, it is recommended that the Motion to Dismiss Indictment be denied.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a <u>de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(<u>en banc</u>).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de</u>

>    novo and a different disposition made.  It is
>    insufficient to submit only a copy of the original
>    brief submitted to the magistrate judge, although a
>    copy of the original brief may be submitted or referred
>    to and incorporated into the brief in support of the
>    objection.  Failure to submit a brief in support of the
>    objection may be deemed an abandonment of the
>    objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

   DONE this 30th day of October, 2007.

                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE